IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF OKLAHOMA

FILED

MAR 29 2012

WILLIAM B. GUTHRIE
Clerk, U.S. District Court
By _____
Deputy Clerk

BILL R. CATHEY, )
)
Plaintiff, )
)
v. )   No. CIV 10-220-RAW-SPS
)
JUSTIN JONES, et al., )
)
Defendants. )

## OPINION AND ORDER

This action is before the court on the defendants' motion to dismiss or for summary judgment and plaintiff's motion for a preliminary injunction. The court has before it for consideration plaintiff's amended complaint, the parties' motions, their responses and replies, and a special report prepared by the Oklahoma Department of Corrections (DOC) at the direction of the court, in accordance with *Martinez v. Aaron*, 570 F.2d 317 (10th Cir. 1978).

Plaintiff, an inmate in the custody of DOC who is incarcerated at Oklahoma State Penitentiary (OSP) in McAlester, Oklahoma, brings this action pro se under the authority of 42 U.S.C. § 1983, seeking relief for alleged constitutional violations during his incarceration at that facility. The 18 defendants are Justin Jones, DOC Director; Debbie Morton, DOC Director's Designee; Dr. Michel Jackson, DOC Chief Medical Officer; Randall Workman, OSP Warden; Chester Mason, OSP Medical Administrator; Tracy Davis, OPS H-Unit Manager; William Jones, OSP Director of Security; Marcella Thompson, OSP H-Unit Shift Supervisor; Linda Morgan, OSP Assistant Warden; Sean Chumley, OSP Shift Supervisor; Eric Thomas, OSP H-Unit Case Manager; Debbie Aldridge, OSP H-Unit Manager; John Marler, OSP H-Unit Physician; Matthew Butzer, OSP Guard; Dale Cantrell, OSP Disciplinary Hearing Officer; Ron Parker, OSP Property Room Supervisor; Frank Dedmon, OSP Captain; and David Orman, OSP Mail Room Supervisor.[1]

---

[1] To the extent the defendants are sued in their official capacities as DOC officials, plaintiff's claims are barred by the Eleventh Amendment. It is well settled that a damages

Plaintiff alleges his constitutional rights and privileges have been violated, setting forth 16 grounds for relief in a rambling, 150-page amended complaint with exhibits:

Ground 1:   OSP has treated me in ways that grossly violate the Eighth and Fourteenth Amendments.

Ground 2:   Using "beanholes" for purposes they were not intended causes injury and violates the Eighth Amendment.

Ground 3:   In violation of the First and Fourteenth Amendments, the Mail Room Supervisor is seizing, keeping, and returning mail.

Ground 4:   In violation of the Eighth amendment, the health hazards of H-Unit at OSP make it unfit for human habitation.

Ground 5:   In violation of the Fourteenth Amendment, prison administrators arbitrarily seize inmate money.

Ground 6:   In violation of the Fourteenth Amendment, prison administrators arbitrarily and capriciously seize items of value.

Ground 7:   As a matter of safety and due process, an inmate's request to change cellmates should be granted.

Ground 8:   In violation of the Eighth Amendment, inmates on H-Unit are being deprived of coats during winter.

Ground 9:   In violation of the Eighth Amendment, OSP inmates are not receiving sufficient yard time.

Ground 10:   It is an Eighth Amendment violation to run showers in the middle of the night.

Ground 11:   In violation fo the Fourteenth Amendment, OSP is denying inmates

---

suit against a state official in his official capacity is merely another way of pleading an action against the State. *See Kentucky v. Graham*, 473 U.S. 159, 165 (1985). *See also Will v. Michigan Dept. of State Police*, 491 U.S. 58, 71 (1988) (state officials sued in their official capacities are not "persons" for purposes of a § 1983 suit, because the suit is against the official's office and not against the official).

legal access.

Ground 12:   Purposefully depriving inmates of sleep constitutes cruel and unusual punishment.

Ground 13:   The DOC's grievance procedure violates due process, because it prevents inmates from exhausting administrative remedies.

Ground 14:   Convictions for inmate misconducts are [] frequently obtained in violation of due process.

Ground 15:   In violation of the Eighth Amendment, OSP's medical system practitioners are deliberately indifferent to legitimate health needs.

Ground 16:   Inmates at OSP are not provided cleaning supplies for their cells as federal law requires and DOC OP's [sic] promise.

The defendants have filed a motion to dismiss or for summary judgment, alleging in part that plaintiff is improperly challenging a misconduct conviction, and he has failed to exhaust the administrative remedies for all except two of his remaining claims.

**Standard of Review**

The defendants have moved the court for dismissal of this action or in the alternative for summary judgment. Having moved for summary judgment in their favor, the movants are required to show the absence of a genuine issue of material fact. Fed. R. Civ. P. 56(a).

> A party asserting that a fact cannot be or is genuinely disputed must support the assertion by:
>
> (A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or
>
> (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.

Fed. R. Civ. P. 56(c)(1).

Summary judgment is not appropriate if there exists a genuine material factual issue

such that a reasonable jury could return a verdict for the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249-51 (1986). Plaintiff, as "the nonmoving party may not rest on [his] pleadings but must set forth specific facts showing that there is a genuine issue for trial as to those dispositive matters for which [he] carries the burden of proof." *Applied Genetics Int'l. v. First Affiliated Sec., Inc.*, 912 F.2d 1238 (10th Cir. 1990) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986)). In this regard, all evidence of the nonmoving party is deemed true, and all reasonable inferences are drawn in favor of the nonmoving party. *Id.* at 255 (citing *Adickes v. S. H. Kress & Co.*, 398 U.S. 114, 158-59 (1970)). This court's function is not "to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Id.* at 249. With these standards in mind, the court turns to the merits of the defendants' motion.

**Misconduct Conviction**

Plaintiff alleges in Count 14 that misconduct convictions frequently are obtained in violation of due process. He claims he was verbally harangued for attempting or plotting an escape, based on a April 15, 2010, shakedown of his cell that revealed contraband. He claims he received a misconduct, but no hearing was held, and he cannot obtain information on the status of the misconduct.

The special report indicates plaintiff was convicted of the offense of Possession/Manufacture of Contraband on April 27, 2010. The Disciplinary Hearing Report indicates the hearing finding him guilty was held on April 27, 2010, and plaintiff refused to sign the Report on May 3, 2010. [Docket No. 89-14 at 7]. Plaintiff contends, however, that he never had a disciplinary hearing.

"[A] state prisoner's claim for damages is not cognizable under 42 U.S.C. § 1983 if 'a judgment in favor of the plaintiff would necessarily imply the invalidity of his conviction or sentence,' unless the prisoner can demonstrate that the conviction or sentence has previously been invalidated." *Edwards v. Balisok*, 520 U.S. 641, 643 (1997) (quoting *Heck v. Humphrey*, 512 U.S. 477, 487 (1994)). This rule of law extends to prison disciplinary

4

hearings. *Id.* at 648.

Before plaintiff can seek compensatory damages for his alleged unconstitutional misconduct conviction, he first must prove his "conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus." *Heck*, 512 U.S. at 487 (1994) (citing 28 U.S.C. § 2254). Because the misconduct has not been set aside, plaintiff's claim for damages under 42 U.S.C. § 1983 has not yet accrued. Count 14 must be dismissed without prejudice.

**Exhausted Claims**

The defendants deny plaintiff's allegation that he was prevented from exhausting his administrative remedies and assert the Special Report demonstrates that he failed to exhaust the administrative remedies for all but two of the § 1983 issues in his amended complaint. According to the defendants, the exhausted claims were raised in two grievances: (1) ARA 08-046, regarding confiscated property found in the law library (relief denied on March 31, 2008), and (2) ARA 08-1585, regarding access to the law library (relief denied on August 21, 2008). [Docket Nos. 84-1 at 5, 84-7 at 2-7, 84-8 at 2-7]. The defendants allege these exhausted claims relate to Count 6 of the amended complaint [Docket No. 86 at 17], but the facts of Count 6 concern the alleged seizure of hot pots from inmates, not the issues in the two exhausted claims.

Grievance ARA 08-046 concerned a February 6, 2008, shakedown in the H-Unit Law Library that resulted in the seizure of plaintiff's legal and personal papers and books by Lt. Chumley and Unit Manager Debbie Aldridge. According to the Special Report, plaintiff placed pornographic images, personal books, and legal materials in a cardboard box, affixed his name and DOC number on it, and concealed it in the drawer of a filing cabinet in the law library. Petitioner acknowledged it belonged to him. The box was confiscated as contraband, because it was in an unauthorized area. [Docket No. 84-28 at 262].

Plaintiff contests the defendants' version of the incident, claiming the box did not

have his name and DOC number on it, but was a catch-all box in the top drawer of the filing cabinet. Some, perhaps most, of the box's contents belonged to plaintiff. The box also was used to exchange books, and plaintiff had some books belonging to a law clerk. Without plaintiff's knowledge, the law clerk had returned some of plaintiff's books and put them in the box. The box also contained some of plaintiff's legal work, including pleadings he had drafted, research by the law clerks, and plaintiff's trial transcripts.

Upon request, Defendant Aldridge returned some of the legal work. Plaintiff insists the material was not contraband, but was taken out of spite, and the Unit Manager's definition of "contraband" was not in the Operating Procedures. He asked to ship the items home, but was denied. Plaintiff sought his post-deprivation remedy of a tort claim, but it was denied. The denial letter indicated plaintiff did not exhaust all his administrative remedies, and the State was not negligent. [Docket No. 94 at 23-28, 65].

Pursuant to OP-030120, inmates may keep no more than one cubic foot of legal reference materials, including books, in their living areas. At the warden's discretion, an inmate may be allowed additional short-term storage outside his cell or living area. Plaintiff never requested permission to store legal materials, personal books, or pornography in the law library, so his property was seized. When an inmate fails to take advantage of opportunities provided by the facility to preserve the materials, such as by making arrangements to have them removed from the facility, he acquiesces to destruction of the material, and there is no due process violation. *See Davis v. Ark. Valley Corr. Facility*, 99 Fed. Appx. 838, 842, 2004 WL 1119941 (10th Cir. 2004) (unpublished opinion).

To state a § 1983 claim, plaintiff is "required to plead the inadequacy or unavailability of a post-deprivation remedy." *Montana v. Hargett*, 84 Fed. Appx. 15, 17, 2003 WL 22925256, at **2 (10th Cir. 2003) (unpublished opinion) (citing *Durre v. Dempsey*, 869 F.2d 543, 548 (10th Cir. 1989)). Oklahoma law recognizes a post-deprivation remedy in the tort of conversion, *White v. Webber-Workman Co.*, 591 P.2d 348, 350 (Okla. Ct. App. 1979), but plaintiff failed to exhaust his administrative remedies before filing the tort claim. Therefore,

his claim should not be heard in this court.

To the extent plaintiff is claiming the confiscation denied him access to the courts, a prisoner must demonstrate actual injury to have standing to raise the claim. *Lewis v. Casey*, 518 U.S. 343, 350-51 (1996). "To do so, he must show that any denial or delay of access to the court prejudiced him in pursuing litigation." *Treff v. Galetka*, 74 F.3d 191, 194 (10th Cir. 1996). Plaintiff, however, denies he is raising a claim regarding access to the courts. [Docket No. 94 at 29].

Grievance ARA 08-1585 concerned plaintiff's July 7, 2008, request for physical access to the law library to research state and federal appeals. The response to his Request to Staff indicated he was required to provide proof of a deadline before he could have direct access to the law library. The investigation indicated plaintiff did not have a deadline. [Docket No. 84-1 at 12-17].

Plaintiff asserts in his response to the motion that this grievance is not related to any of his claims. [Docket No. 94 at 30]. He, nonetheless, takes issue with the defendants' arguments. He complains that space always is available in the law library, yet OSP has a strict rule requiring a court deadline before an inmate can physically access the library. He claims his deadline for an appeal in this case has passed, but the denial of access to the library compromised his ability to conduct research. His appeal to the Tenth Circuit was denied, because he could not appeal the Magistrate Judge's ruling. He claims he would have known the applicable rules, if he had been allowed to go to the library. [Docket No. 94 at 31-32]. This speculation fails to state a claim for denial of access to the courts.

**Unexhausted Claims**

The defendants allege plaintiff has failed to exhaust the available administrative remedies for his remaining claims. He asserts he has submitted some 50 Requests to Staff and Grievances to the warden and the Administrative Review Authority, but none was answered. [Docket No. 14 at 6]. He maintains there is a conspiracy to derail his lawsuit, and his attempts to exhaust his administrative remedies "were purposely and deliberately ignored

and not answered under direct orders from Warden Randall Workman." [Docket No. 14 at 7-8]. Plaintiff insists he has attempted to exhaust his administrative remedies for all his claims, but Defendant David Orman "seizes, edits, and destroys prisoner mail." [Docket No. 94 at 18]. Plaintiff further contends the copies of his unanswered Requests to Staff and Grievances are the only proof of his attempts to exhaust his administrative remedies. [Docket No. 94 at 16]. The defendants simply deny his allegations. [Docket No. 86 at 17].

"No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). Inmates are required to exhaust available administrative remedies, and suits filed before the exhaustion requirement is met must be dismissed. *Booth v. Churner*, 532 U.S. 731, 740-41 (2001); *Yousef v. Reno*, 254 F.3d 1214, 1216 n.1 (10th Cir. 2001). "An inmate who begins the grievance process but does not complete it is barred from pursuing a § 1983 claim under PLRA for failure to exhaust his administrative remedies." *Jernigan v. Stuchell*, 304 F.3d 1030, 1032 (10th Cir. 2002) (citation omitted).

According to DOC Policy OP-090124, "Inmate/Offender Grievance Process," an inmate first must attempt to resolve his complaint informally. If that is unsuccessful, he may submit a Request to Staff (RTS). If the complaint still is not resolved, he then may file a grievance. If the grievance also does not resolve the issue, the inmate may appeal to the Administrative Review Authority or the Chief Medical Officer. The administrative process is exhausted only after all of these steps have been taken.

While exhaustion of administrative remedies is mandatory under the Prison Litigation Reform Act, 42 U.S.C. § 1997e(a), the Tenth Circuit Court of Appeals recently reemphasized that "[t]he plain language of the PLRA requires prisoners to exhaust only *available* remedies." *Tuckel v. Grover*, 660 F.3d 1249, 1252 (10th Cir. 2011) (citation omitted) (emphasis in original). "It follows that if an administrative remedy is not available, then an inmate cannot be required to exhaust it." *Id.* "Where prison officials prevent, thwart, or hinder a prisoner's

8

efforts to avail himself of an administrative remedy, they render that remedy 'unavailable' and a court will excuse the prisoner's failure to exhaust." *Little v. Jones*, 607 F.3d 1245 F.3d 1245, 1250 (10th Cir. 2010). "Based on this principle, . . . district courts [are obligated] to ensure that any defects in exhaustion are not procured from the action or inaction of prison officials." *Tuckel*, 660 F.3d at 1252 (quotation omitted).

It is impossible to ascertain from the record whether plaintiff's allegations regarding the loss or destruction of his attempts to exhaust his administrative remedies have any validity. Because there are genuine issues of material fact, summary judgment cannot be granted at this time.

**Second Amended Complaint**

The defendants have asked the court to dismiss this action as frivolous, pursuant to 28 U.S.C. § 1915(e)(2). Rule 8(a)(2) of the Federal Rules of Civil Procedure requires "**a short and plain statement of the claim showing that the pleader is entitled to relief**." Plaintiff certainly has not complied with this requirement, as his amended complaint is unnecessarily lengthy, unfocused, and filled with irrelevant facts and comments. While plaintiff may believe this style of writing is entertaining or even useful, it actually hinders the court in analyzing his claims.

> "[W]e will not search the record in an effort to determine whether there exists dormant evidence which might require submission of the case to a jury." *Gross v. Burggraf Constr. Co.*, 53 F.3d 1531, 1546 (10th Cir. 1995) (citing *United States v. Dunkel*, 927 F.2d 955, 956 (7th Cir. 1991) ("Judges are not like pigs, hunting for truffles buried in briefs.")).

*Roska ex rel. Roska v. Peterson*, 328 F.3d 1230, 1246 n.13 (10th Cir. 2003).

Further, many of the allegations in plaintiff's amended complaint concern incidents or conditions affecting other inmates. He may be attempting to assist the court with his extensive background material, but such information only clutters the amended complaint and makes it more difficult to determine plaintiff's personal claims. Plaintiff does not have standing to sue on behalf of other inmates he alleges have been harmed. It is well-settled that "a section 1983 claim must be based upon the violation of a plaintiff's personal rights, and

9

not the rights of someone else." *Archuleta v. McShan*, 897 F.2d 495, 497 (10th Cir. 1990). A plaintiff must show he **personally** suffered some injury as a result of defendants' conduct, *Duke Power Co. v. Carolina Environmental Study Group*, 438 U.S. 59, 72 (1978), and must assert his own legal interests rather than those of third parties, *Warth v. Seldin*, 422 U.S. 490, 499 (1975).

While plaintiff's amended complaint has many deficiencies, "[d]ismissal of a pro se complaint for failure to state a claim is proper only where it is obvious that the plaintiff cannot prevail on the facts he has alleged and it would be futile to give him an opportunity to amend." *Perkins v. Kansas Dept. of Corrections*, 165 F.3d 803, 806 (10th Cir. 1999) (citing *Whitney v. New Mexico*, 113 F.3d 1170, 1173 (10th Cir. 1997)). Therefore, plaintiff is directed to file a second amended complaint within thirty (30) days in conformance with the following requirements:

Plaintiff's future filings in this case should be concise and should raise only relevant facts and issues. The second amended complaint may not include claims that have been dismissed by this Opinion and Order. The second amended complaint must include all the allegations and supporting material to be considered by the court, and it may not reference or attempt to incorporate material from plaintiff's original or first amended complaint. *See* Local Rule 9.2(c). Plaintiff is to refrain from including unsupported speculation, rhetorical questions, and unnecessary or sarcastic comments in the second amended complaint. He must limit the second amended complaint to claims that directly concern him and not discuss issues concerning other inmates. Generalized allegations regarding issues affecting all inmates will not be considered. He is to avoid lengthy or irrelevant background information or other excessively long narratives. The second amended complaint should state the facts of each separate claim and why he believes his constitutional rights were violated. He should include relevant dates, if available, for consideration of the claims in light of Oklahoma's two-year statute of limitations for civil rights claims. *See Meade v. Grubbs*, 841 F.2d 1512, 1522 (10th Cir. 1988). Any exhibits should be numbered in the lower right corner of the

pages to allow readable scanning in the court's Electronic Case Management system. Plaintiff's failure to comply with these directions may result in dismissal of this action for failure to comply with Rule 8(a)(2).

**Motion for Temporary Injunction**

Plaintiff has filed a separate motion for temporary injunction [Docket No. 110], alleging his cell was searched for three and one-half hours on June 16, 2011. OSP guards, following instructions from Defendant Warden Workman, allegedly entered plaintiff's cell, read almost all of his legal pleadings, and took some of the documents with them. He claims it was not an ordinary shakedown, so he suggests it was not a search for contraband. He speculates that Craig Regens, the defendants' attorney, instigated the search, possibly to find something that would support his defense in this case.

Plaintiff allegedly was placed in an enclosed concrete exercise yard in direct sunlight for five hours, without water or bathroom facilities. He claims his cell was destroyed, with his legal work left in the toilet and feces on his pillow case. All of his writing paper, pens, and stamps were gone, and a pair of his eyeglasses was broken. About 3,000 pages of personal and legal papers were left on the floor, scattered and mixed. Plaintiff contends his copy of the defendants' motion to dismiss was among the documents that were not returned.

Unit Manager William Taylor subsequently returned 91 pages of the seized material from Terry Crenshaw, the warden's assistant. Crenshaw claimed only 126 pages were seized, but plaintiff contends the guards left with a huge garbage bag of papers. He learned he was suspected of having a cell phone, and another search allegedly was planned.

Plaintiff asks the court to require the return of all his personal and legal material and to prevent the defendants from seizing more of his legal materials during the pendency of this case. In the alternative, he asks for a hearing to determine the inventory of every item seized to determine whether the seizure was legal.

The defendants have filed a response to the motion [Docket No. 111], alleging plaintiff falsely claimed that Warden Workman or defense counsel ordered the search of his

cell. Instead, OSP officials and employees seized legal materials in plaintiff's cell that belonged to Inmate Jacob Barrett. The OSP team dispatched a "shakedown" team to plaintiff's cell and seized 126 pages of documents. Ninety-one pages were determined to belong to plaintiff, so those were returned. Thirty-five pages belonged to Inmate Barrett, who formerly was incarcerated at OSP. The search allegedly recovered the following contraband in plaintiff's cell:

1. Affidavits signed by Jacob Barrett
2. Handwritten notes detailing litigation tactics and strategies Barrett had learned from the "Prison Legal News"
3. Affidavits signed by Barrett's grandmother
4. Handwritten motions signed by Barrett in plaintiff's cell

Plaintiff has replied to the defendants' response, again suggesting Warden Workman and Attorney Regens were involved in the shakedown. He disputes whether some items are contraband, and asserts 35 pages of alleged contraband were returned to him.

The district court may grant a preliminary injunction if the party seeking it shows: (1) a substantial likelihood of prevailing on the merits, (2) irreparable harm in the absence of the injunction, (3) proof that the threatened harm outweighs any damage the injunction may cause to the party opposing it, and (4) that the injunction, if issued, will not be adverse to the public interest. *Autoskill Inc. v. Nat'l Educ. Support Sys., Inc.*, 994 F.2d 1476, 1487 (10th Cir.), *cert. denied*, 510 U.S. 916, 114 (1993); *Resolution Trust Corp. v. Cruce*, 972 F.2d 1195, 1198 (10th Cir. 1992).

"[A] preliminary injunction is an extraordinary remedy, [so] the right to relief must be clear and unequivocal." *SCFC ILC, Inc. v. Visa USA, Inc.*, 936 F.2d 1096, 1098 (10th Cir. 1991) (citations omitted). "Because mandatory preliminary injunctions are disfavored, before a district court may grant such relief, the movant must make a heightened showing of the above four factors." *Attorney General of Oklahoma v. Tyson Foods, Inc.*, 565 F.3d 769, 776 (10th Cir. 2009) (citations omitted). Here, the court finds neither party has set forth the

requirements for a preliminary injunction or alleged whether and how the requirements have been met. Instead, the parties have presented only speculative and conclusory allegations. Plaintiff's motion, therefore, is denied.

### ACCORDINGLY, IT IS HEREBY ORDERED that:

1. The defendants' motion for summary judgment [Docket No. 86] is GRANTED with respect to plaintiff's exhausted claims that were the subject of Grievances ARA 08-046 and ARA 08-1585, and those claims are DISMISSED WITH PREJUDICE.

2. The defendants' motion also is GRANTED with respect to plaintiff's misconduct conviction, and that claim is DISMISSED WITHOUT PREJUDICE.

3. The defendants' motion for dismissal of plaintiff's unexhausted claims, pursuant to 42 U.S.C. § 1997e(a), is DENIED WITHOUT PREJUDICE.

4. Plaintiff's motion for a temporary injunction [Docket No. 110] is DENIED WITH PREJUDICE.

5. Plaintiff is directed to submit a second amended complaint within thirty (30) days in conformance with the instructions set forth in this Opinion and Order. Failure to comply may result in dismissal of this action.

IT IS SO ORDERED this 29th day of March 2012.

*Ronald A. White*
**RONALD A. WHITE**
**UNITED STATES DISTRICT JUDGE**